**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

ROSHON E. THOMAS, aka Rollin
Roy Phillips,
          *Defendant-Appellant.*

No. 04-30541

D.C. No.
CR-03-00129-FVS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Fred L. Van Sickle, Chief Judge, Presiding

Submitted March 9, 2006*
Seattle, Washington

Filed May 18, 2006

Before: Diarmuid F. O'Scannlain, Barry G. Silverman, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge O'Scannlain

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Richard D. Wall, Spokane, Washington, was on the briefs for the appellant.

James A. McDevitt, United States Attorney, and Joseph A. Harrington, Assistant United States Attorney, were on the brief for the appellee.

**OPINION**

O'SCANNLAIN, Circuit Judge:

This case requires us to consider whether a driver of a rental car who is not listed on the rental agreement has standing to challenge a police search of the vehicle.

I

Michael Bahr, a Spokane City, Washington, police officer and Drug Enforcement Agency ("DEA") task force officer, received a tip regarding the defendant-appellant, Roshon Thomas, in November 2002. Officer Bahr never met with the undisclosed source of the tips ("the Source"), whose identity has remained confidential out of concern for the individual's safety.[1] Officer Bahr spoke with the Source over the phone, determined its identity, and learned that the Source had never been arrested or convicted of a criminal offense. The Source received no compensation for the information provided to Officer Bahr.

The Source told Officer Bahr that Thomas had been renting cars—or instructing others to rent them for him—which he would use to transport crack cocaine from Long Beach, California, to Spokane, Washington. Approximately 1-2 years earlier, the Source rented a vehicle at Thomas's direction. Thomas and the Source drove the vehicle to Long Beach, where the Source was present when Thomas purchased crack cocaine, which they then transported back up to Spokane in the rental vehicle. The Source reported that Thomas made similar trips with other individuals every six to eight weeks.

---

[1]Thus, the source is not "unidentified," as Thomas suggests.

A

In November 2002, according to the Source, Thomas obtained and transported crack cocaine from Long Beach for an individual named Antonio Crawford, who had recently been arrested for the distribution of crack cocaine. The Source explained that Jamie McGuffey rented the vehicle Thomas used to transport the drugs from Long Beach. The Source stated that McGuffey usually rented cars from Dollar Rental Company or Budget Rental Company at the Spokane Airport.

The police then corroborated the Source's information, to the extent possible. Officer Bahr was aware that during that month, Crawford had been arrested for the distribution of crack cocaine. The Spokane County Gang Unit advised Officer Bahr that McGuffey was one of Thomas's known associates. Officers also spoke with a manager at the Spokane Airport location of the Budget Rental Car Company ("Budget"), who confirmed that McGuffey had rented a car in November 2002, and returned it with 2,889 additional miles on the odometer. Based on his training and experience, Officer Bahr concluded that this milage was consistent with a round trip from Spokane to Long Beach. The Budget manager later informed Officer Bahr that Thomas had rented cars from Budget on three prior occasions, though milage information had been expunged from company computers.

B

In December 2002, the Source again provided Officer Bahr with information that Thomas would be traveling to Long Beach with his family over the Christmas holiday. Again the Source asserted that the purpose of the trip was to transport crack cocaine. The Spokane County prosecutor's office informed Officer Bahr that an arrest warrant had been issued for Thomas, but Officer Bahr was further advised that the warrant had been recalled due to a miscommunication between Thomas and the prosecutor's office.

C

On February 27, 2003, the Budget manager at the Spokane Airport contacted Officer Bahr to inform him that Thomas and McGuffey had attempted to rent a car that day. Budget refused to rent Thomas and McGuffey a car because both had outstanding unpaid late fees. The Budget manager told Officer Bahr that he intended to warn the other rental car services at the Spokane Airport about Thomas and McGuffey.

On March 4, 2003, a representative from National Car Rental ("National") at the Spokane Airport called Officer Bahr and reported that McGuffey had just made a four-day rental reservation. McGuffey was scheduled to pick up the car — a white 2003 Dodge Intrepid — at noon the following day. National's manager agreed to allow the police to install a tracking device in the car while the car was in National's garage facility before rental to McGuffey.[2]

On March 5, McGuffey entered into a rental contract with National. McGuffey signed the rental agreement below the following text: "Only I and authorised driver(s) may drive the vehicle." The contract did not list Thomas as an authorized driver.

D

On March 8, 2003, the tracking device alerted police that McGuffey's rental car returned to Washington State. Because Officer Bahr was unavailable at the time, he contacted another DEA officer who, accompanied by Washington State Patrol troopers, monitored the freeways until a car matching the description of the rental car—including a matching license plate number—appeared at approximately 1:30 a.m.

---

[2]Though National's manager granted permission, Officer Bahr also obtained a warrant authorizing him to install the tracking device.

After stopping the car, the DEA agent approached the car and recognized Thomas from a booking photograph that he had been given by Officer Bahr. There were no other individuals in the vehicle. Thomas presented officers with a driver's license bearing the name "Roland Phillips." After further confirming Thomas's true identity by checking his tattoos, officers arrested Thomas based on an outstanding warrant. The police then searched the rental vehicle and found, among other items, nearly 600 grams of cocaine in what police described as "a Sprint bag, a small . . . telephone bag," located next to the spare tire in the vehicle's trunk.[3] They also found $1200 and 25.1 grams of heroin.

E

Thomas's counsel moved to suppress the evidence seized from the rental car. During the suppression hearing, Thomas asserted that the use of the tracking device violated his right to privacy under *Griswold v. Connecticut*, 381 U.S. 479 (1965), but did not contend that McGuffey gave him permission to use or to drive the rental car.[4] The district court concluded that Thomas "failed" to show that McGuffey gave permission to use the car because "nothing was presented in [Thomas's] favor at the suppression hearing."[5] The district

---

[3]The record does not disclose whether Thomas consented to the search, but the government does not attempt to justify the search on consent grounds. Because the burden is on the government to show consent, *United States v. Chan-Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997), therefore, we assume that Thomas did not consent to the search.

[4]Thomas's trial counsel's decision not to call any witnesses on the standing issue were Thomas's grounds for a later motion to withdraw his guilty plea.

[5]Thomas contends that the district court reached inherently contradictory factual conclusions regarding McGuffey permission (or lack thereof) to use the rental car. Though the district court noted that Thomas did not present any evidence showing that McGuffey loaned Thomas the rental car, the district court also stated that "McGuffey's decision *to allow* Mr. Thomas to drive the rental car nullified the rental agreement" (emphasis

court denied Thomas's motion to suppress on several grounds: an unauthorized driver of a rental car has no expectation of privacy, so Thomas lacked standing to challenge the search; there was probable cause to issue a search warrant; monitoring public movements was not a search in the first place; a *Terry* stop was proper under the circumstances; the automobile exception applied and supported the search; and discovery was inevitable in any event.

After the district court denied Thomas's motion to suppress, Thomas entered a conditional guilty plea to one count of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1).[6] The district court sentenced Thomas to 188 months pursuant to U.S.S.G. § 4B1.1.

Thomas remains in custody and timely appeals.

## II

Thomas contends that he has standing to challenge an

---

added). Thomas asserts that this statement conflicts with the conclusion that McGuffey did not give Thomas permission to use the rental car.

We disagree. The district court noted "McGuffey's decision to allow" Thomas to drive the rental car as part of its alternative holding that the discovery of the drugs was inevitable. The district court could *only* reach the inevitable discovery question *after* concluding that Thomas had standing —that is, *assuming* he had permission to use the car. The district court's statement does not abrogate its clear factual conclusion that McGuffey did not give Thomas permission to use the car.

In any event, it is undisputed that Thomas presented no evidence during the suppression hearing that McGuffey gave permission to use the rental car. Thus, had the district court concluded that McGuffey gave Thomas permission, that conclusion would not be supported by any evidence and we would reject it as clearly erroneous.

[6]Thomas later attempted to withdraw this plea, arguing ineffective assistance of counsel. The district court denied the motion to withdraw the guilty plea, and Thomas does not appeal that decision.

allegedly unconstitutional search of the rental car even though he was not formally authorized to drive the car.[7]

A

[1] To evaluate whether an unauthorized driver has a privacy interest in a rental car, we consider whether "the person who claims the protection of the [Fourth] Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). An expectation of privacy is legitimate if it is one which society accepts as objectively reasonable. *See Minnesota v. Olson*, 495 U.S. 91, 95-96 (1990); *California v. Greenwood*, 486 U.S. 35, 39 (1988). Courts have developed at least three approaches to determining when an unauthorized driver of a rental vehicle has standing to challenge a search.

The first approach is seen in the Fourth, Fifth, and Tenth Circuits.[8] *See United States v. Wellons*, 32 F.3d 117, 119 (4th Cir. 1994); *United States v. Boruff*, 909 F.2d 111, 117 (5th Cir. 1990); *United States v. Roper*, 918 F.2d 885, 887-88 (10th Cir. 1990). These courts have all adopted a bright-line

---

[7]We review a motion to suppress de novo. *United States v. Bynum*, 362 F.3d 574, 578 (9th Cir. 2004); *United States v. Meek*, 366 F.3d 705, 711 (9th Cir. 2004). Findings of fact underlying the district court's determination are reviewed for clear error. *Bynum*, 362 F.3d at 578.

[8]In *United States v. Kye Soo Lee*, 898 F.2d 1034 (5th Cir. 1990), the Fifth Circuit concluded that an unauthorized driver may have standing to challenge the search of a rental truck if the driver had the renter's permission. However, later Fifth Circuit cases have followed a bright-line approach and have noted that *Kye Soo Lee* "is not controlling . . . because it neither reflects nor addresses the terms of the truck rental agreement." *United States v. Seeley*, 331 F.3d 471, 472 n.1 (5th Cir. 2003); *see also United States v. Dortch*, 199 F.3d 193, 205 (5th Cir. 1999) ("The suppression hearing record does contain evidence that under the rental agreement neither Dortch nor the passenger was an authorized driver. These facts distinguish the instant case from [*Kye Soo Lee*.]"). Similarly, in this case, where the rental agreement shows that only McGuffey was authorized to drive the car, *Kye Soo Lee* is inapplicable.

test: An individual not listed on the rental agreement lacks standing to object to a search. Their cases reason that because an unauthorized driver lacks a property or possessory interest in the car, the driver does not have an expectation of privacy in it. *See also United States v. Haywood*, 324 F.3d 514, 516 (7th Cir. 2003) (concluding that where the driver lacks a valid license, the rental company would not have granted permission to use the vehicle, and there is no expectation of privacy).

The second approach, seen in the Eighth Circuit, is a modification of the majority bright-line approach, and generally disallows standing unless the unauthorized driver can show he or she had the permission of the authorized driver. *United States v. Best*, 135 F.3d 1223, 1225 (8th Cir. 1998); *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995) (per curiam). The Eighth Circuit reasoned that an unauthorized driver would have standing after a showing of "consensual possession" of the rental car. *Muhammad*, 58 F.3d at 355 (citing *United States v. Sanchez*, 943 F.2d 110, 114 (1st Cir. 1991), which held, for a privately owned car, that a defendant would have standing on a showing of "a more intimate relationship with the car's owner or a history of regular use of the [car]"). In effect, this approach equates an unauthorized driver of a rental car with a non-owner driver of a privately owned car. *Cf. United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir. 1980) (holding non-owner has standing to challenge a search where he has "permission to use his friend's automobile and the keys to the ignition and the trunk, with which he could exclude all others, save his friend, the owner"); *Sanchez*, 943 F.2d at 114.

The third approach, adopted in the Sixth Circuit, examines the totality of the circumstances. *United States v. Smith*, 263 F.3d 571, 586 (6th Cir. 2001). In *Smith*, the Sixth Circuit noted a broad presumption against granting unauthorized drivers standing to challenge a search. However, the court stated that the "rigid [bright-line] test is inappropriate, given

that we must determine whether [the defendant] had a legitimate expectation of privacy which was reasonable in light of all the surrounding circumstances." *Id.* (citing *Rakas*, 439 U.S. at 152 (Powell, J., concurring)). Instead, the court opted to consider a range of factors, including: (1) whether the defendant had a driver's license; (2) the relationship between the unauthorized driver and the lessee; (3) the driver's ability to present rental documents; (4) whether the driver had the lessee's permission to use the car; and (5) the driver's relationship with the rental company, and held that the defendant had standing to challenge the search. *Id.*

B

**[2]** The extent of an unauthorized driver's standing to challenge a rental automobile search is a question of first impression in this Circuit. We have previously held that the owner of an automobile has a legitimate expectation of privacy in the car, and therefore he has standing to object to an unconstitutional search. *See United States v. Kovac*, 795 F.2d 1509, 1510-11 (9th Cir. 1986) (citing *Rakas*, 439 U.S. at 144 n.12). In contrast, "a person does not possess a reasonable expectation of privacy in an item in which he has no possessory or ownership interest." *United States v. Cormier*, 220 F.3d 1103, 1108 (9th Cir. 2000) (citing and discussing *United States v. Miller*, 425 U.S. 435, 440 (1976)). Thus, the question becomes whether an unauthorized driver has a possessory or ownership interest in the car.

**[3]** A "possessory or ownership interest" need not be defined narrowly: A reasonable expectation of privacy may be shown " 'either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.' " *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas*, 439 U.S. at 142 n.12). Therefore, a defendant who lacks an ownership interest may still have standing to challenge a search, upon a showing of "joint control" or "common authority" over the property searched.

*Compare Portillo*, 633 F.2d at 1317 (defendant has standing to challenge a search of a friend's car because he was in possession of the car with the permission of the owner), *and United States v. Johns*, 851 F.2d 1131, 1136 (9th Cir. 1988) (defendants have standing to challenge search of a storage unit over which they had joint control and supervision), *with United States v. Lockett*, 919 F.2d 585, 588 (9th Cir. 1990) (defendant who did not reside at or show a proprietary interest in a residence, and who could not show joint control or supervision of the property, lacks standing to challenge a search).

**[4]** Common authority rests "on mutual use of the property by persons generally having joint access or control for most purposes." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (quotation omitted). For example, in *United States v. Jones*, 362 U.S. 257, 259, 265 (1960), the defendant had standing to challenge a search of a friend's apartment when he had permission to use the apartment, had a key to the apartment, stored his belongings there, and had the right and ability to exclude others, except the owner, from the apartment. *See also Rakas*, 439 U.S. at 148-49 (contrasting *Jones* with a defendant who "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized"). Similarly, in *United States v. Portillo* we held that a defendant had a legitimate expectation of privacy in his friend's car, though the defendant lacked any cognizable property interest in the car. 633 F.2d at 1317. We noted that a defendant may have a legitimate expectation of privacy in another's car if the defendant is in possession of the car, has the permission of the owner, holds a key to the car, and has the right and ability to exclude others, except the owner, from the car. *See id.*

**[5]** The government notes that a driver has no legal right to control or to possess a rental car in contravention of the lease agreement. While it is true that an unauthorized driver may be in violation of the rental agreement, we have previously held that a privacy interest exists *even if* a defendant is in technical

violation of a leasing contract. For example, in *United States v. Henderson*, 241 F.3d 638, 647 (9th Cir. 2001), we held that the lessee of a rental car has a reasonable expectation of privacy in it, even *after* the lease period expires, as long as the lessee retains possession and control over the car. *See also United States v. Cooper*, 133 F.3d 1394, 1398-1402 (11th Cir. 1998) (holding that defendant has standing to challenge search of a rental car after lease period expired). Similarly, we have noted that "the mere expiration of the rental period, in the absence of affirmative acts of repossession by the lessor, does not automatically end a lessee's expectations of privacy" in a motel room. *United States v. Dorais*, 241 F.3d 1124, 1129 (9th Cir. 2001); *see also United States v. Owens*, 782 F.2d 146, 150 (10th Cir. 1986) (motel guest has a right to privacy that continues after check-out time). Under *Henderson*, it cannot be said that a defendant's privacy interest is dependent simply upon whether the defendant is in violation of the terms of his lease agreement.

**[6]** Thus, we must reject the government's contention that a defendant not listed on a lease agreement lacks standing to challenge a search. Based on *Portillo*, *Jones*, *Dorais*, and *Henderson*, we cannot base constitutional standing entirely on a rental agreement to which the unauthorized driver was not a party and may not capture the nature of the unauthorized driver's use of the car. *See Rakas*, 439 U.S. at 143 (stating that "arcane distinctions developed in property and tort law . . . ought not . . . control" the reasonableness of an expectation of privacy (citing *Jones*, 362 U.S. at 266)). Rather, an unauthorized driver who received permission to use a rental car and has joint authority over the car may challenge the search to the same extent as the authorized renter. This approach is in accord with precedent holding that indicia of ownership—including the right to exclude others—coupled with possession and the permission of the rightful owner, are sufficient grounds upon which to find standing. *Jones*, 362 U.S. at 266; *Portillo*, 633 F.2d at 1317.

**[7]** Therefore, we agree with the Eighth Circuit: An unauthorized driver may have standing to challenge a search if he or she has received permission to use the car.

## C

**[8]** Thomas, an unauthorized driver, only has standing to challenge the search of a rental automobile if he received permission to use the rental car from the authorized renter, McGuffey. *See Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980) (defendant has the burden of proving a legitimate expectation of privacy). Here, it is undisputed that Thomas failed to show that he received McGuffey's permission to use the car. Therefore, the district court properly concluded that Thomas lacks standing to challenge the search.[9]

## III

Thomas asserts that the district court made four errors in sentencing.[10] First, he contends that the district court misapplied U.S.S.G. § 4B1.1(b) by wrongly construing the definition of an "Offense Statutory Maximum." Second, Thomas contends that the district court improperly applied U.S.S.G. § 4B1.1(b) by considering offenses to which Thomas neither admitted nor had been proven to a jury beyond a reasonable doubt. Third, Thomas contends, solely in his Reply Brief, that the

---

[9]Because Thomas lacked standing to challenge the search, we need not consider whether the search was proper under the automobile exception, *Maryland v. Dyson*, 527 U.S. 465, 465-66 (1999) (per curiam), or whether the discovery of the drugs was inevitable, *Nix v. Williams*, 467 U.S. 431, 444 (1984).

[10]A sentence imposed pursuant to the Sentencing Reform Act, post-*Booker*, is reviewed for reasonableness. *United States v. Booker*, 125 S. Ct. 738, 765-56 (2005); *United States v. Ameline*, 409 F.3d 1073, 1085 (9th Cir. 2005) (en banc). This court reviews the interpretation and application of the guidelines de novo. *United States v. Nielsen*, 371 F.3d 574, 582 (9th Cir. 2004). Factual findings in the sentencing phase are reviewed for clear error. *Id.* at 582.

district court enhanced his sentence based on judge-found facts. Fourth, Thomas suggests, again only in his Reply Brief, that the district court erred by not advising him that he had the right to have a jury determine drug quantity beyond a reasonable doubt.

A

**[9]** Under the Career Offender sentencing provision, U.S.S.G. § 4B1.1(b), a career offender is assigned an offense level based on the "Offense Statutory Maximum" for the offense of conviction. Thomas argues that *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004), redefines "statutory maximum" as the maximum sentence a judge can impose based solely on the facts as found by the jury or admitted by the defendant. Thus, Thomas contends that the "statutory maximum" should be "based upon the standard guideline range for the offense."

**[10]** However, according to § 4B1.1 application note 2, the term "Offense Statutory Maximum" instead "refers to the *maximum term of imprisonment authorized* for the offense of conviction that is a crime of violence or controlled substance offense." U.S.S.G. § 4B1.1, cmt. n. 2. The application note defines "Offense Statutory Maximum" as the maximum term authorized by the statute for the offense of conviction, not, as Thomas suggests, as the maximum penalty which the defendant could receive under his unique circumstances. Further, the career offender provision involves a determination of the crime's maximum potential punishment, a definition of "statutory maximum" that *Blakely* did not affect. *See United States v. Murillo*, 422 F.3d 1152, 1155 (9th Cir. 2005), *cert. denied*, 2006 WL 849747 (2006) (noting that *Blakely* "involved the 'maximum sentence' a judge may impose based on the jury's verdict or the defendant's admissions," but does not "modify a crime's *potential* punishment"); *see also id.* (noting that the categorization of predicate offenses based on the statutory maximum, rather than the guidelines maximum, "faces none

of the Sixth Amendment concerns that prompted the . . . *Blakely* decision”).

**[11]** Thomas pled guilty to a charge under 21 U.S.C. § 841(a)(1), a class B felony carrying a statutory maximum of 30 years under 21 U.S.C. § 841(b)(1)(C). The offense statutory maximum was, therefore, 30 years. The sentence under § 4B1.1 was proper.

## B

Next, Thomas argues that the district court wrongly used the fact of a prior conviction to increase his sentence, even though he had not admitted to any of the prior convictions and they were not proven to a jury. Thomas argues that *Almendarez-Torres v. United States*, 523 U.S. 224, 244 (1998), holding that the fact of a prior conviction need not be proven to a jury, may not remain good law after *Blakely*. We rejected this argument in *United States v. Weiland*, 420 F.3d 1062, 1079 (9th Cir. 2005), *cert. denied* 2006 WL 219971 (2006), and do so again here.

## C

**[12]** Thomas next contends that the district court improperly enhanced his sentence on the basis of judge-found facts. The district court did not, however, determine the drug quantity; this amount was stipulated to in the plea agreement—to which, of course, Thomas agreed—which stated that, "Officers seized 490.3 grams of powder cocaine and 25.1 grams of heroin from the trunk of the car." The district court did not commit any error in sentencing Thomas on the basis of facts to which he admitted.

## D

Thomas's final contention is that the district court erred by failing to inform him of his right to have a jury determine the

drug quantity beyond a reasonable doubt. This argument was also not presented in Thomas's opening brief and therefore is waived. *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) ("[I]ssues which are not specifically and distinctly argued and raised in a party's opening brief are waived.").

IV

Thomas contends that he is entitled to a remand under *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc).[11] The government disagrees, and asserts that comments made by the district court indicate that the court would have imposed the same sentence had the Guidelines been advisory. Specifically, the district court stated that, "I had some consideration about whether or not you shouldn't be sentenced to a sentence greater than the low end . . . ." Based on this remark, the government urges that Thomas is not entitled to a remand.

[13] To be eligible for an *Ameline* remand, Thomas "must demonstrate a reasonable probability that he would have received a different sentence had the district judge known that the sentencing guidelines were advisory." *Id.* at 1078. We do not take the district court's comment to be an unambiguous pronouncement that it would have entered an identical sentence had the Guidelines been advisory. In the end, the district court gave the defendant the minimum sentence (188 months, for a sentence range of 188 to 235 months). Given that the district court considered and explicitly rejected the option of giving Thomas a longer sentence and instead selected the statutory *minimum* sentence, we cannot say with certainty that Thomas would have received an identical sentence—rather

---

[11]Thomas did not object to the imposition of a Guideline sentence, so any error under *United States v. Booker*, 543 U.S. 220 (2005), is unpreserved and is reviewed for plain error. *Ameline*, 409 F.3d at 1078.

than one below the Guidelines minimum—had the district court known that the Guidelines were advisory.[12]

**[14]** In sum, it is impossible to determine definitively whether there was any prejudicial error in the sentencing. Under the circumstances, a limited *Ameline* remand is necessary.

V

For the foregoing reasons, the decision of the district court is AFFIRMED in part and REMANDED pursuant to *Ameline*.

---

[12]If that were not enough, later in the sentencing, the district court remarked that, "I don't agree with the length of sentences or mandatory minimums that are involved in many occasions, but they're the law." The fact that the district court expressed some reservations about mandatory minimum sentences compounds the likelihood that the defendant's substantial rights were violated.