**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellant*, <br><br> v. <br><br> ANDRES LOPEZ-CRUZ, *Defendant-Appellee*. | No. 11-50551 <br><br> D.C. No. 3:11-cr-01507-JLS-1 <br><br><br> OPINION |

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted
January 7, 2013—Pasadena, California

Filed September 12, 2013

Before: William C. Canby, Jr., Stephen Reinhardt, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Reinhardt

# SUMMARY[*]

### Criminal Law

The panel affirmed the district court's order suppressing evidence obtained when a border patrol agent answered incoming calls on the defendant's cell phones, and the denial of the government's motion for reconsideration of the suppression order, in a case in which the defendant is charged with conspiracy to transport illegal aliens.

Rejecting the government's contention that the defendant lacked standing, the panel held that the defendant had a reasonable expectation of privacy in the phones, and that the district court did not clearly err in finding that the evidence fell short of demonstrating an unequivocal abandonment.

The panel held that the agent's answering the calls exceeded the scope of the defendant's consent to "look in" or "search" the phones. Without deciding the constitutionality of whether an agent can read incoming text messages on a phone he has been given consent to search, the panel rejected the government's attempts to liken incoming calls to text messages and to liken the consent given by the defendant to the contents of a search warrant.

The panel held that the district court did not abuse its discretion in denying the government's motion for reconsideration to consider an argument, raised for the first

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

time in that motion, that exigent circumstances justified answering the calls.

---

**COUNSEL**

Laura E. Duffy, United States Attorney; Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section, Criminal Division; Daniel E. Butcher (argued), Assistant United States Attorney, United States Attorneys' Office, San Diego, California, for Plaintiff-Appellant.

Devin Burstein (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellee.

---

**OPINION**

REINHARDT, Circuit Judge:

When Andres Lopez-Cruz ("Lopez") gave a border patrol agent permission to "look in" or "search" the two cell phones he had with him, the agent did not ask him whether he would also consent to the agent's answering any incoming calls. Nonetheless, when one of the phones rang while the agent was conducting his search, he answered it, passing himself off as Lopez. By answering the call, the agent obtained information leading to Lopez's arrest and felony charges of conspiracy to transport illegal aliens under 8 U.S.C. §§ 1324 (a)(1)(A)(ii) and (v)(I). Lopez moved to suppress the evidence obtained from the phone calls. The district court granted the motion to suppress and denied the government's motion for reconsideration. The government appeals.

## FACTUAL BACKGROUND

One evening, border patrol agent Soto and his partner were patrolling Highway 80 near Jacumba, California, an area near the border with Mexico known for the smuggling of undocumented individuals. The agents began surveillance of Lopez because he was driving a car that they did not recognize as belonging to any of the residents of the nearby small town, and because he was "brake tapping," behavior that the agent recognized as consistent with people being "guided in to pick up somebody or something." When Lopez pulled over to the shoulder of the road to make a U-turn, the agents stopped their unmarked SUV behind him and activated the lights to indicate that they were law enforcement personnel.

The agents walked up to the car and agent Soto asked Lopez where he was going and what he was doing. Lopez told him that he was going to pick up a friend, border patrol agent Amawandy, at a nearby casino. He also told the agent that the car that he was driving belonged to a friend. Agent Soto testified that he did not ask Lopez who the friend was, but that Lopez's "answers changed a lot."

During their discussion, agent Soto noticed two cell phones in the car's center console. Soto asked Lopez whether the phones were his and Lopez responded that the phones, like the car, belonged to a friend. The agent then asked, "Can I look in the phones? Can I search the phones?" Lopez consented by responding "yes." When conducting the search of the phones, Soto took them behind the car, out of Lopez's presence where he could neither "see [n]or hear what [the agent] was doing with the phones."

Within about a minute, one of the phones rang. Rather than ignoring the call or asking Lopez's permission to answer it, the agent answered the phone and initiated a conversation with the caller. The caller asked, "How many did you pick up?" The agent responded, "none," and the caller hung up. The phone rang again less than two minutes later. The agent answered again and a different caller asked, "How did it go?" The agent replied in Spanish, "I didn't pick up anybody. There was [sic] too many Border Patrol in the area." The caller told him to return to San Diego. Shortly thereafter, the caller phoned again, believing she was speaking with Lopez, but instead informed agent Soto that there were two people next to a house where there was a lot of lighting, and gave instructions to drive there, flash his high beams, and the two people would come out.

The agents arrested Lopez and followed the caller's instructions, which led them to pick up two people, who admitted to being Mexican citizens without documents.

## PROCEDURAL BACKGROUND

Before trial, Lopez filed a motion to suppress the evidence obtained when the agent answered the incoming calls. He contended that the agent exceeded the scope of his consent. Lopez submitted a declaration stating that he "didn't understand that [he] had a choice to say no" when the agents asked for consent to search the phones and that "[i]t never occurred to [him] that agents were going to answer incoming calls on the cell phone." He further stated that "[h]ad [he] believed that agents would answer the phones, [he] never would have given [his] permission to search the phones." The government argued that Lopez did not have standing to contest the search because he disclaimed ownership of the

phones, or, in the alternative, that answering incoming calls fell within the scope of Lopez's consent. The district court held an evidentiary hearing at which Agent Soto testified and was cross-examined. After hearing evidence, the district court requested further briefing on whether answering an incoming call falls within the scope of consent to search a cell phone.

Ultimately, the district court granted Lopez's motion to suppress. The court found that Lopez had standing to challenge the search of the cell phones because "the phones were in the possession of the defendant and being used by the defendant at the time of the encounter." On the scope of consent issue, the district court applied the "objective reasonableness standard" and determined that Lopez's consent "was limited to an examination of the phone itself and that further legal justification was required before the agents answered it." After full exploration of the issue through briefing, a hearing, and supplemental briefing, the district court held that a reasonable person would not "believe that a consent to look at or search a cell phone would include consent to answer incoming calls."

The government, receiving the district court's permission, filed a motion for reconsideration. In its motion, the government contended for the first time that the agent's answering of the incoming call was justified by the exigent circumstances exception to the warrant requirement. The district court declined to consider the newly raised argument for two reasons. First, it found that the new evidence that the government offered "was available at the time of the evidentiary hearing." Second, it found that the government did not "raise[] the exigent circumstances argument in the initial or supplemental briefing submitted when the court first

considered [the] motion to suppress." Based on these facts, the district court "decline[d] to exercise its discretion" to grant the motion to reconsider. The district court went on to conclude that in the alternative, even if it were to consider the newly raised exigent circumstances argument, it would have rejected it because the agent did not have probable cause.

The government appeals both the order granting Lopez's motion to suppress and the order denying the government's motion for reconsideration.

## DISCUSSION

### I. Standing

We review de novo the district court's conclusion that Lopez had standing to claim that his Fourth Amendment rights were violated when the agent answered incoming calls intended for Lopez. *See United States v. Reyes-Bosque*, 596 F.3d 1017, 1026 (9th Cir. 2010). We review the underlying factual findings for clear error. *Id.*

To have standing to seek suppression of the fruits of the agent's search, Lopez must show that he personally had "a property interest protected by the Fourth Amendment that was interfered with . . . , or a reasonable expectation of privacy that was invaded by the search." *United States v. Padilla*, 111 F.3d 685, 688 (9th Cir. 1997) (quoting *United States v. Padilla*, 508 U.S. 77, 82 (1993)). Here, elements of both requirements support the district court's conclusion that Lopez had standing to contest the agent's reception of the phone calls.

The reasonable expectation of privacy turns on (1) whether the person had "an actual (subjective) expectation of privacy," and (2) whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). In short, it turns on whether the individual's subjective expectation of privacy is objectively reasonable. *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007) (citation omitted).[1]

The district court found that "the location of the phones within the vehicle suggest [sic] that the phones were in the possession of the defendant and being used by the defendant at the time of the encounter." It also noted that "the agents apparently drew a similar conclusion by seeking defendant's consent before seizing the phones." The district court's factual conclusion—that Lopez had possession of and was using the phones—is not clearly erroneous. Possession and use of the phones suffices to make Lopez's expectation of privacy objectively reasonable.

Nonetheless, the government argues that Lopez lacks standing because (1) he did not carry his burden by presenting affirmative evidence of ownership or permission to use the

---

[1] The parties dispute which of two automobile search cases controls. Lopez argues that *United States v. Portillo*, 633 F.2d 1313 (9th Cir. 1980) controls. The government argues that the controlling case is *United States v. Thomas*, 447 F.3d 1191 (9th Cir. 2006). Both of these cases, however, involved the question whether defendants had standing to object to the search of the *vehicle*. In contrast, here, the question is whether Lopez has standing to challenge the search of the phones—items of property not recovered from a search of the vehicle but possessed by Lopez and handed over to the agents with consent to search them. Thus, neither *Portillo* nor *Thomas* controls here.

seized phones; or, (2) if he met his threshold burden, he abandoned any reasonable expectation of privacy when he renounced ownership of the phones. We reject both arguments.

First, as the government points out, Lopez bears the burden of establishing standing. The government is incorrect, however, in asserting that Lopez could not have carried his burden without providing proof of ownership or additional proof that he had permission to use the phones beyond the facts that were already in the record. Contrary to the government's assertions, the fact of ownership or permissive use is merely one factor among many that aids in determining whether the individual had a reasonable expectation of privacy in the item searched. *See United States v. Sarkisian*, 197 F.3d 966, 987 (9th Cir. 1999) ("[T]he failure to allege ownership of the items seized, by itself, could not bar standing to challenge the search," although it is "a factor to be considered."). Although we have not announced a precise set of factors to be considered in determining whether there exists a reasonable expectation of privacy, the Fifth Circuit considers:

> whether the defendant has a property or possessory interest in the thing seized or the place searched, whether he has a right to exclude others from that place [or the thing seized], whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, whether he took normal precautions to maintain privacy, and whether he was legitimately on the premises [or legitimately in possession of the thing seized].

*United States v. Finley*, 477 F.3d 250, 258–59 (5th Cir. 2007) (quoting *United States v. Cardoza–Hinojosa*, 140 F.3d 610, 615 (5th Cir. 1998)) (original alterations and quotation marks omitted).  Although we do not adopt the Fifth Circuit's list of factors as exhaustive, they are among the factors that are generally relevant to our analysis.

As the district court found from the facts in the record, Lopez had possession of the phones and was using them.  He certainly had the right to exclude others from using the phones.  He also had a reasonable expectation of privacy in incoming calls and a reasonable expectation that the contents of those calls "would remain free from governmental intrusion." *Finley*, 477 F.3d at 259 (citation omitted).  Lopez "took normal precautions to maintain privacy," *id.*, in that he did not abandon or throw the phones out of the car when the agents stopped him.  Finally, no evidence suggested that Lopez did not legitimately possess the phones.  We conclude, therefore, that Lopez had a reasonable expectation of privacy in the phones.

The government's second argument is that Lopez lacks standing because he voluntarily abandoned the cell phones, thereby abandoning any expectation of privacy in them.  The government argues that Lopez abandoned any privacy interest in the phones when he told the officer that they belonged to a friend.  The touchstone of "abandonment is a question of intent," however. *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986).  We conduct a "totality of the circumstances" inquiry that "focus[es] on whether, through words, acts or other objective indications, a person has relinquished a reasonable expectation of privacy in the property at the time of the search or seizure." *Id.* (citations omitted).

The district court's factual findings that "the phones were in the possession of [Lopez] and being used by [him] at the time of the encounter" were not clearly erroneous, and, therefore, the government cannot reasonably claim that Lopez abandoned the privacy interest simply by denying ownership. The district court's factual findings support the conclusion that Lopez did not abandon his reasonable expectation of privacy in the phones. It found that "[Lopez] told Agent Soto that the phones belonged to a friend, but he did not disclaim use of them or otherwise disassociate himself from them." Further, as the district court explained, the fact that the agent sought Lopez's permission before searching the phones suggests that the agent did not believe that Lopez had abandoned his privacy interest in the phones, and contradicts the government's position that his actions exhibited a clear abandonment of them.

Moreover, none of our "abandonment" cases has held that mere disavowal of ownership, without more, constitutes abandonment of a person's reasonable expectation of privacy in that property. For example, in *United States v. Decoud*, the defendant disclaimed ownership, but he also explained that "he did not know how to open" the locked briefcase found in the trunk of the car that he was driving, thus denying any form of association with the briefcase. 456 F.3d 996, 1001 (9th Cir. 2006). Likewise, in *Nordling*, we concluded that the defendant had abandoned his luggage because he knowingly left it on the plane under a seat when he was escorted off by officials and twice denied having had any luggage with him on the flight. 804 F.2d at 1469–70. Because Lopez's case involves only his response to the agent's question as to whether the phones were his rather than any affirmative denial of any association with the phones, the district court's conclusion that "the evidence in this case fell short of

demonstrating an unequivocal abandonment of the property" was not clearly erroneous.

## II. Scope of Consent

"It is a violation of a suspect's Fourth Amendment rights for a consensual search to exceed the scope of the consent given." *United States v. McWeeney*, 454 F.3d 1030, 1034 (9th Cir. 2006). The district court determined that the agent's act of answering the incoming phone call exceeded the scope of Lopez's consent. We review "[a] district court's finding as to the scope of consent [] for clear error." *United States v. Huffhines*, 967 F.2d 314, 319 (9th Cir. 1992). The government argues that the standard of review should be de novo because this case presents the legal question of whether a general consent to search a phone includes consent to answer it. *See United States v. Shaibu*, 920 F.2d 1423, 1425 (9th Cir. 1990) (noting that a pure question of law in Fourth Amendment cases is reviewed de novo). Because we reach the same result under either standard, we consider whether consent to search a phone, without more, generally includes consent to answer it.

The scope of consent is determined by asking "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). The test is an objective one. The district court explained that a reasonable person would not "believe that a consent to look at or search a cell phone would include consent to answer incoming calls." It held that Lopez's "consent in this case was limited to an examination of the phone itself and that further legal justification was required before the agents answered it."

At the suppression hearing, the agent testified that he asked Lopez: "Can I look in the phones?  Can I search the phones?"  Lopez submitted a declaration that stated:  "It never occurred to me that agents were going to answer incoming calls on the cell phone.  Had I believed that agents would answer the phones, I never would have given my permission to search the phones."  Applying the *Jimeno* "reasonable person" standard to these facts, the district court determined that Lopez's consent to search the phones did not extend to answering incoming calls.  The district court's ruling was correct.

Nonetheless, the government presses two arguments in support of its claim that answering incoming calls categorically falls within the scope of consent to search a phone.  First, the government contends that answering a call is no different from pushing a button to read an incoming text message (which it assumes would fall within the scope of a general consent).  Without deciding the constitutionality of whether an agent can read incoming text messages on a phone he has been given consent to search, we reject the government's attempt to liken incoming calls to text messages.  When an agent answers the incoming call and engages the caller in conversation, as agent Soto did here, he intercepts a call intended for the individual in possession of the phone and pretends to be that person in order to obtain information or create a new exchange with the caller.  The agent's impersonation of the intended recipient constitutes a meaningful difference in the method and scope of the search in contrast to merely pushing a button in order to view a text message.  The agent is not simply viewing the contents of the phone (whether incoming text messages or stored messages), but instead, is actively impersonating the intended recipient.  Here, agent Soto did so by answering a call, concealing the

fact that he was a border patrol agent, and leading the caller to believe that the information he was exchanging was with Lopez.

The government's second argument seeks to liken the consent given by Lopez to the contents of a search warrant. The government reasons that because we held that answering incoming calls did not exceed the scope of the relevant *search warrant* in two cases, *United States v. Ordonez*, 737 F.2d 793, 810 (9th Cir. 1984) (amended opinion), and *United States v. Gallo*, 659 F.2d 110 (9th Cir. 1981), the answering of incoming calls following a *consent* to search the phones does not exceed the scope of that consent. Because a search warrant is materially different from consent, the government's argument fails.

A search pursuant to a warrant is "limited by the extent of the probable cause" on which the warrant is based. *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 857 (9th Cir. 1991). In contrast, a search pursuant to consent is limited by the extent of the consent given for the search by the individual. *Jimeno*, 500 U.S. at 251. Unlike a scope of the search warrant case, in which we review for whether the evidence seized was "reasonably related to the purpose of the search" (that is, reasonably related to the probable cause supporting the issuance of the warrant), *Ordonez*, 737 F.2d at 810, in a scope of consent case, we review for what "the typical reasonable person [would] have understood" the parties to have said to each other, *Jimeno*, 500 U.S. at 251.

Agent Soto did not have a warrant. Accordingly, he did not have authority to search for evidence that might have fallen within the scope of a warrant that he did not have. The only authority to search that agent Soto had was pursuant to

Lopez's consent. Accordingly, the government's position that the reasoning of *Gallo* and *Ordonez* applies here is simply incorrect. An individual who gives consent to the search of his phone does not, without more, give consent to his impersonation by a government agent, nor does he give the agent permission to carry on conversations in which the agent participates in his name in the conduct of criminal activity.

Thus, we reject the government's position that consent to search a cell phone extends to answering incoming calls. Here, the agent's answering of the phone exceeded the scope of the consent that he obtained and, thus, violated Lopez's Fourth Amendment right. As a general matter, consent to search a cell phone is insufficient to allow an agent to answer that phone; rather, specific consent to answer is necessary.

## III. The Motion for Reconsideration

The government asks us to reach and accept its argument, raised for the first time on a motion to reconsider before the district court, that exigent circumstances justified the answering of the phone calls. The district court declined to exercise its discretion to consider this belated argument. It found that "the exigent circumstances argument was not raised in the initial or supplemental briefing submitted when the court first considered Defendant's motion to suppress," and that the new evidence, a declaration from agent Soto going to his probable cause for the search "was available at the time of the evidentiary hearing" but not presented to the court. The district court reasoned:

> Afterthoughts or shifting ground do not constitute an appropriate basis for

reconsideration. \*\*\* Nor is a motion to reconsider justified on the basis of new evidence which could have been discovered prior to the court's ruling. Accordingly, with respect to the government's exigent circumstances argument, the court finds no valid basis for reconsideration of its prior order and declines to exercise its discretion in this regard.

Although the government contends that the district court incorrectly relied on the law of the case doctrine, it misunderstands the district court's ruling.**[2]**  The district court cited the law of the case doctrine in another part of its decision, but did not rely on that doctrine when declining to exercise its discretion to consider the government's exigent circumstances argument.

We review the district court's denial of a motion to reconsider for abuse of discretion. *United States v. Tapia-Marquez*, 361 F.3d 535, 537 (9th Cir. 2004); *see United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).  No precise "rule" governs the district

---

**[2]** The district court cited the law of the case when declining to reconsider its earlier ruling that Lopez had standing—the government's first basis for reconsideration—but that discussion was not relevant to the government's new argument of exigent circumstances, which constituted the government's second and entirely separate basis for reconsideration.  As explained in the text, *infra*, in deciding the government's second basis for reconsideration, the district court appropriately declined to exercise its discretion to consider an argument not previously raised.  It did not mention or rely on law of the case.

court's inherent power to grant or deny a motion to reconsider a prior ruling in a criminal proceeding. Rather, the district court's authority to revisit a ruling on a suppression motion "is within its sound judicial discretion." United States v. Raddatz, 447 U.S. 667, 678 n.6 (1980). In *United States v. Wong*, we affirmed a denial of a motion for reconsideration of a suppression order because the new evidence "could readily have been presented at the original hearing on the motion to suppress" and because the defendant offered no excuse for the failure to do so. 470 F.2d 129, 132 (9th Cir. 1972). Here, the district court exercised its discretion in a manner consistent with these cases, declining to consider an argument and evidence that the government failed to raise in its opposition to the motion to suppress, in the hearing on the motion, in its briefing before the hearing, or in its supplemental briefing after the hearing on the motion.

The government gives no reason for its failure to raise or argue exigent circumstances prior to the district court's grant of the motion to suppress. Instead, it wishfully asserts that it *did* raise the exigent circumstances exception in its initial briefing. It says that it did so inferentially by citing to *United States v. Davis*, 787 F. Supp. 2d 1165 (D. Or. 2011), which discussed a number of exceptions to the warrant requirement, including the exigency exception. Not only did the government quote from a section of *Davis* having little to do with the exigent circumstances exception, but nowhere in its briefing did the government mention exigency or probable cause.[3]

---

[3] While the government cited *Davis* in its opposition, the section quoted discusses the exigent circumstances exception only briefly. The section of *Davis* that fully discusses and disposes of the exigency exception was not cited. The district court did not abuse its discretion in determining that

The district court did not abuse its discretion in denying the motion for reconsideration. Its reason for denying the motion to reconsider was logical, plausible, and supported by inferences drawn from the record. *Hinkson*, 585 F.3d at 1262. We know of no case reversing a district court for exercising its discretion in this manner, and the government cites none.[4]

## CONCLUSION

For the reasons discussed above, we AFFIRM the district court's order suppressing the evidence obtained by answering Lopez's cell phones and AFFIRM the district court's denial of the government's motion for reconsideration.

**AFFIRMED**.

---

such cursory treatment by the government was insufficient to raise the exigency exception. This is especially the case because the government never discussed exigency or probable cause. Further, the government cited to *Davis* only to argue that Lopez gave agent Soto permission to answer the cell phones, not to argue that a separate exception to the warrant requirement existed.

[4] In view of our holding, *supra*, we do not consider the district court's alternative holding that neither probable cause nor exigent circumstances existed.

The government raises another new argument in its reply brief, citing *Hudson v. Michigan*, 547 U.S. 586 (2006)). This argument is waived. *See Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996).