372 P.3d 1016

**STATE of Arizona, Appellant,**

v.

**Douglas Christian WASBOTTEN, Appellee.**

No. 1 CA–CR 15–0556

Court of Appeals of Arizona, Division 1.

FILED 05/31/2016

Maricopa County Attorney's Office, Phoenix, By Gerald R. Grant, Counsel for Appellant.

The Law Offices of David A. Black, Phoenix, By David A. Black, Counsel for Appellee.

Presiding Judge Peter B. Swann delivered the opinion of the court, in which Judge Lawrence F. Winthrop and Judge Donn Kessler joined.

## OPINION

SWANN, Judge:

¶ 1 The State of Arizona appeals the trial court's suppression of contraband discovered in an inventory search of a rental truck. First, the state argues that Douglas Christian Wasbotten had no standing to challenge a search of a rented vehicle when he was not an authorized driver under the rental agreement. Second, the state argues that the rental truck was properly impounded under A.R.S. § 28–3511, and the search was a valid inventory search. We hold that a driver of a rental vehicle, driving with the renter's permission but not authorized by the rental agreement, is not *per se* without standing to challenge a search of the vehicle. But we also hold that A.R.S. § 28–3511, which requires

impoundment of a vehicle driven by a person with a suspended or revoked license, does not require that the person be driving at the moment the vehicle is stopped. Shortly before the rental truck in this case was stopped, a renter with an invalid license was observed driving it. The impound and inventory search here were therefore lawful. We reverse the suppression order.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The facts are not in dispute. On July 31, 2014, Wasbotten was the passenger in a rented truck that Jennifer Daniels was driving. She pulled the truck into a gas station, and they switched places. Wasbotten then drove the truck out of the gas station. After Wasbotten rolled through a stop sign, an officer, who had also observed them pull into the gas station and switch places, pulled them over. The officer discovered that Daniels had rented the truck, but she had a suspended license. And while Wasbotten had a valid license, he was not authorized to drive by the rental agreement. The officer arrested Daniels, impounded the truck, and performed an inventory search.

¶ 3 In the course of the search, the officer found a baggie containing what he believed to be methamphetamine and a syringe filled with a clear liquid. Wasbotten was then arrested. The officer testified that in an interview after his arrest, Wasbotten admitted the methamphetamine and syringe belonged to him. He was charged with possession of methamphetamine and possession of drug paraphernalia.

¶ 4 Wasbotten moved to suppress the methamphetamine and paraphernalia found in the truck. He argued that because A.R.S. § 28–3511 states that law enforcement may impound the vehicle if "[a] person *is driving*" with driver's license suspended or revoked, the unlicensed driver must be driving at the time of the stop. (Emphasis added.) Because Wasbotten—not Daniels—was driving with a valid license at the time of the stop, he contends that the officer could not legally

have impounded the vehicle. If the impound was not legal, he reasons, the inventory search would not have been legal, and any evidence obtained from the search should be suppressed. The state contested Wasbotten's standing to challenge the search, on the ground that Wasbotten had no possessory interest in the truck and therefore had no reasonable expectation of privacy.

¶ 5 The court, following the Ninth Circuit's decision in *United States v. Thomas*, 447 F.3d 1191 (9th Cir.2006), ruled that Wasbotten had standing to challenge the search because he had "permission [to drive the vehicle] granted by the authorized renter." The court also concluded that the impoundment was illegal because A.R.S. § 28–3511 requires that law enforcement stop a driver with the suspended or revoked license while she is driving as a precondition to impounding her vehicle. The court granted Wasbotten's motion to suppress and the state successfully moved to dismiss the case.

## DISCUSSION

I. WASBOTTEN HAS STANDING TO CHALLENGE THE SEARCH OF THE RENTAL VEHICLE.

■ ¶ 6 The Fourth Amendment entitles "people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A person's Fourth Amendment rights do not depend solely on property rights but rather on a "legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Because Wasbotten was not authorized by the rental agreement to drive the truck, the question is whether he had a legitimate expectation of privacy as he drove it.

■ ¶ 7 The state urges us to adopt the "bright line" rule from the Third, Fourth, Fifth, and Tenth Circuits that a driver who is unauthorized by the rental agreement has no reasonable expectation of privacy and no standing to challenge a search of the vehicle.[1]

---

1. The state characterizes the Ninth Circuit's approach as the minority approach. But our canvass reveals no true majority rule in the federal circuits. The Eighth and Ninth Circuits both decided that an unauthorized person who has permission to use the rental vehicle has standing. *United States v. Best*, 135 F.3d 1223, 1225 (8th Cir. 1998); *Thomas*, 447 F.3d at 1198. The Sixth

*See United States v. Kennedy*, 638 F.3d 159, 165 (3d Cir.2011); *United States v. Wellons*, 32 F.3d 117, 119 (4th Cir.1994); *United States v. Seeley*, 331 F.3d 471, 472 (5th Cir. 2003); *United States v. Roper*, 918 F.2d 885, 887–88 (10th Cir.1990). We reject the notion that a driver's constitutional expectation of privacy hinges on a contractual relationship with a rental car company; we instead follow the approach of the Eighth and Ninth Circuits. *See United States v. Muhammed*, 58 F.3d 353, 355 (8th Cir.1995); *Thomas*, 447 F.3d at 1198–99.

■ ¶ 8 In *Thomas*, the Ninth Circuit held that "it cannot be said that a defendant's privacy interest is dependent simply upon whether the defendant is in violation of the terms of [a] lease agreement.... Rather, an unauthorized driver who received permission to use a rental car and has joint authority over the car may challenge the search to the same extent as the authorized renter." 447 F.3d at 1198–99; *see also Muhammad*, 58 F.3d at 355 (standing requires permission from the renter, but not the rental car company). The state contends that Wasbotten, as a "brief and transitory" driver and a passenger of the authorized user, had less of a connection to the vehicle than the defendant in *Thomas*. We disagree. In *Thomas*, the defendant's standing to challenge a search depended not on how long he had driven the vehicle or whether others accompanied him but whether he had permission to drive the vehicle. Thomas failed to prove that he had such permission. *Id.* at 1199. But in this case there is no dispute that Daniels gave Wasbotten permission to drive the vehicle. Wasbotten had at least joint control of the vehicle, and he therefore had standing to challenge the search under *Thomas*.

Circuit uses a totality of the circumstances approach. *United States v. Smith*, 263 F.3d 571, 586 (6th Cir.2001) ("[W]e refuse to adopt a bright line test ... based solely on whether the driver of a rental vehicle is listed on the rental agreement. ... [W]e must determine whether Smith had a legitimate expectation of privacy which was reasonable in light of all the surrounding circumstances."). The Eleventh Circuit distinguishes between drivers unauthorized because the rental agreement has expired and drivers unauthorized because they were not listed on the rental agreement. *United States v. Cooper*, 133 F.3d 1394, 1399–1400 (11th Cir.1998). And the Seventh Circuit has not taken a position. *United States v. Sanford*, 806 F.3d 954, 958–59 (7th Cir.2015). Even the Third Circuit's "bright line" approach recognizes that an unauthorized driver might have a reasonable expectation of privacy in "extraordinary circumstances." *United States v. Kennedy*, 638 F.3d 159, 165 (3d Cir.2011).

## II. LAW ENFORCEMENT PROPERLY IMPOUNDED THE RENTAL VEHICLE.

■ ¶ 9 The state also contends that even if Wasbotten has standing to challenge the search, the inventory search following impound of the vehicle was proper. On this point, the state is correct. The impound statute reads: "A peace officer shall cause the removal and either immobilization or impoundment of a vehicle if the peace officer determines that: [ ] A person is driving the vehicle while any of the following applies: ... the person's driving privilege is suspended or revoked for any reason." A.R.S. § 28–3511(A)(1)(a). We review questions of statutory interpretation de novo. *State v. Givens*, 206 Ariz. 186, 188, ¶ 4, 76 P.3d 457 (App. 2003). "In construing a legislative enactment, we apply a practical and commonsensical construction," *State v. Alawy*, 198 Ariz. 363, 365, ¶ 8, 9 P.3d 1102 (App.2000), and look first to the plain meaning of the words as the best indicator of the statute's meaning, *Givens*, 206 Ariz. at 188, ¶ 5, 76 P.3d 457. We seek to give effect to the legislature's intent in drafting it. *Id.*

■ ¶ 10 The trial court ruled the impoundment was unlawful because "[t]he person with a suspended license was not driving the vehicle at the time the officers had cause to stop the vehicle. Although the officers had previously observed [Daniels] driving, 'is' does not mean 'was.' " This is too restrictive a reading of the statute's plain language. The statute's use of the present progressive phrase "is driving" requires that the driving occur while her license is suspended or revoked. A.R.S. § 28–3511(A)(1)(a). It does not require driving at the moment of the actual stop by the peace officer. The opposite construction would lead to absurd results—un-

der Defendant's interpretation, an individual with a suspended license could avoid impoundment simply by pulling onto a side street and exiting the vehicle before law enforcement initiated contact. We find no support in the statutory language for such an outcome.

## CONCLUSION

¶ 11 For the foregoing reasons, we reverse the suppression order.