**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Xavier V. PADILLA, Defendant–**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Maria Jesus PADILLA, Defendant–**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jorge PADILLA, Defendant–Appellant.**

Nos. 96–10190, 96–10197, 96–10198.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 15, 1997.

Decided April 15, 1997.

Walter B. Nash, III, Michael J. Bloom, Tucson, AZ; Stephen M. Dichter, Phoenix, AZ, for defendants–appellants.

James D. Whitney, Assistant United States Attorney, Tucson, AZ, for plaintiff–appellee.

Before: LAY,* GOODWIN, and SCHROEDER, Circuit Judges.

GOODWIN, Circuit Judge:

Xavier, Maria, and Jorge Padilla appeal the district court's ruling that they lack standing to challenge a search of a car that they were not driving and that they did not own. This court previously held that the Padillas had standing to contest the search. *United States v. Padilla,* 960 F.2d 854, 858–61 (9th Cir.1992). On certiorari, the Supreme Court reversed, holding our coconspirator exception to the Fourth Amendment's standing requirements invalid. *United States v. Padilla,* 508 U.S. 77, 78, 113 S.Ct. 1936, 1937, 123 L.Ed.2d 635 (1993). The Court remanded for a determination of whether the Padillas had a property interest that was interfered with by the stop of the car, or a reasonable expectation of privacy that was invaded by the search. *See id.* at

82, 113 S.Ct. at 1939. On remand, the district court found that the Padillas met neither requirement and therefore lacked standing to contest the search. We affirm.

### Factual and Procedural Background

On September 26, 1989, Officer Fifer of the Arizona Department of Public Safety stopped a car traveling on Interstate 10 toward Phoenix. The driver of the car was Luis Arciniega, but the car belonged to Donald Simpson, a U.S. Customs agent.[1] Arciniega consented to a search of the trunk of the car, where police discovered 560 pounds of cocaine.[2] The cocaine was wrapped in cellophane and taped with tan plastic tape. The packages were marked with the Spanish word "pollo," meaning "chicken."

Once in custody, Arciniega agreed to cooperate with the authorities, who set up a controlled delivery of the drugs. They drove the car to a prearranged meeting place and then disabled it. Arciniega telephoned Xavier Padilla at Padilla's sister's residence to let him know that the cocaine had arrived. Xavier Padilla sent his wife, Maria, and his brother, Jorge, to pick up the cocaine. Maria Padilla drove Jorge Padilla to the location. When Jorge tried to start the car, both Jorge and Maria Padilla were arrested. Police later arrested Xavier Padilla.

The Padillas claim that they formed and operated a cocaine transportation organization for hire. Xavier Padilla, acting on behalf of Jorge, Maria, and himself, hired Arciniega to drive the load car, directed him on the route he should follow and his ultimate destination, and gave him a phone number where the Padillas could be reached. The Padillas paid Simpson for the use of the car and selected the route for the transportation of the cocaine. Xavier and Jorge Padilla drove the route themselves ahead of time.

The three Padillas were indicted for conspiracy to distribute and to possess with

---

* Honorable Donald P. Lay, Senior United States Circuit Judge for the United States Court of Appeals, Eighth Circuit, sitting by designation.

1. On remand, the district court held that Donald Simpson and his wife had standing to challenge the search of the car. That holding is not challenged in this appeal.

2. In this appeal, the government does not contest the illegality of the initial stop and ensuing search.

intent to distribute cocaine in violation of 21 U.S.C. § 846, and possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Xavier Padilla was also charged with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848. The Padillas moved to suppress all evidence, and the district court initially granted the motion, finding that there was no reasonable suspicion for the stop of the vehicle. This was the only search issue on which the district court ruled.

On appeal to this court, the government challenged the Padillas' standing to contest the search. We held that Xavier Padilla had standing to challenge the search under our then-existing coconspirator standing rule. See Padilla, 960 F.2d at 858–61. We remanded to the district court for additional factual findings regarding Jorge and Maria Padilla's specific roles in the conspiracy. See id. at 861.

Granting the government's petition for certiorari, the Supreme Court reversed, rejecting the Ninth Circuit coconspirator exception, and remanded. Padilla, 508 U.S. at 82, 113 S.Ct. at 1939. We, in turn, remanded to[*] the district court for decision in light of the Supreme Court's holding. United States v. Padilla, 993 F.2d 721 (9th Cir.1993).

The district court held that neither Xavier, Maria, nor Jorge Padilla had standing to challenge the search. The district court found that while Xavier Padilla was the transporting agent, he did not own the car nor was he in active control of it at the time of the stop. The court also found that Jorge and Maria Padilla were mere facilitators of the transaction who had no Fourth Amendment interest in the cocaine. The Padillas entered a conditional guilty plea, reserving the right to challenge the standing issue in this appeal.

### Standard of Review

■ Whether a defendant has standing to contest the legality of a search presents a mixed question of fact and law. See United States v. Singleton, 987 F.2d 1444, 1447 (9th Cir.1993). We review the district court's ultimate legal conclusion de novo. See id. However, we must accept the findings of fact underlying that conclusion unless they are clearly erroneous. See id.

### Analysis

■ The Padillas must show that "their own expectations of privacy or property interests were violated by the challenged police conduct" in order to have standing to contest an unreasonable search. United States v. Lingenfelter, 997 F.2d 632, 636 (9th Cir. 1993). Mere membership or participation in a conspiracy does not establish standing for purposes of the Fourth Amendment. "Expectations of privacy and property interests govern the analysis of Fourth Amendment search and seizure claims. Participants in a criminal conspiracy may have such expectations or interests, but the conspiracy itself neither adds to nor detracts from them." Padilla, 508 U.S. at 82, 113 S.Ct. at 1939 (emphasis added).

The district court found that none of the named defendants had a property interest in the car or a reasonable expectation of privacy that was invaded by the search. We hold that these findings are supported by the record and are not clearly erroneous. See Singleton, 987 F.2d at 1447.

■ Relying on our opinion in United States v. Johns, 707 F.2d 1093 (9th Cir.1983), rev'd on other grounds, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), the defendants contend that they had a protected possessory interest in the car as a result of the bailment relationship between them and the Simpsons arising from their use of the Simpsons' car. Johns did not establish, however, that a bailment relationship alone could create a property interest protected by the Fourth Amendment. Rather, we relied for our determination that the Johns defendants had standing on "their formalized arrangement with the other five defendants for the transportation of the contraband." Id. at 1100. Thus, our holding was premised on the very coconspirator exception rejected by the Supreme Court in Padilla, 508 U.S. at 78, 113 S.Ct. at 1937.

■ The Padillas assert that because they took steps to conceal the cocaine packages,

they had a legitimate expectation of privacy analogous to the Fourth Amendment interest the Supreme Court has recognized in parcels delivered to private freight carriers. *See United States v. Jacobsen,* 466 U.S. 109, 114, 104 S.Ct. 1652, 1656–57, 80 L.Ed.2d 85 (1984). That the Padillas wrapped and mislabeled the packages does not establish a reasonable expectation of privacy in the load car. Most individuals involved in criminal enterprises attempt to conceal their wrongdoing. Further, unlike the defendants in *Jacobsen,* the Padillas did not own the cocaine, but merely were paid to arrange its transport. Their obfuscation of drugs owned by others which were transported by Arciniega in Simpson's car does not give rise to an expectation of privacy protected by the Fourth Amendment.

*United States v. Al–Talib,* 55 F.3d 923 (4th Cir.1995), supports our conclusion that the Padillas lack standing. There, a defendant argued that he had a legitimate expectation of privacy in an automobile that he did not own in which drugs were found, despite the fact that he was not present at the search. The defendant claimed that, as a supervisor of the man who was driving the car when it was searched, he " 'maintained considerable control' over the vehicle." *Id.* at 931. He hired the driver and participated in planning the trip on which the stop occurred. *See id.* at 927–28. He loaded the car with the drugs and gave the driver his pager number. The driver checked in with the defendant every day. *See id.* The Fourth Circuit, citing to the Supreme Court's *Padilla* decision, held that the defendant's interest was insufficient to give him standing to contest the search. *See id.* at 931.

We do not hold that members of a conspiracy can never have standing to contest a search of items or places related to the conspiracy. However, conspirators must show that they personally have "a property interest protected by the Fourth Amendment that was interfered with . . ., or a reasonable expectation of privacy that was invaded by the search." *Padilla,* 508 U.S. at 82, 113 S.Ct. at

1939. This the Padillas have not demonstrated.

AFFIRMED.